Meek vs. Holton.

No. 11.—HEMRICK MEEK, (next friend,) plaintiff in error, vs. FRANCIS T. HOLTON, defendant in error.

[1.] An instrument was in substance as follows: This Indenture, made, &c. between John Taylor, Sr., and Sythia Meek, his daughter, witnesseth, that the said John, for the love which he has for his said daughter, hath given, granted, and conveyed, and does by these presents, give, grant, and convey to the said daughter, and her children, free from all disposition of her present or any future husband, the following property, to-wit: Toby, Piety, and Mariah, negroes, a fourth part of his stock of cattle, one colt, one mare, one filly, one sucking colt; the mare and colt only during his life, after which they are to be divided among all of his children; (also two beds, bedsteads and furniture, during his life, after which they are to be divided among all his children: he was to have the use, and control of Piety and Mariah during his life, and at his death, they were to belong to his daughter as aforesaid; to have and to hold said bargained property and its increase to her, and all the children, together with all the right and title thereof, to her, and their own use, benefit, and behoof, forever. In testimony whereof, he thereunto set his hand, and affixed his seal.

his<br>
JOHN ⋈ TAYLOR.<br>
mark.

Signed, sealed, and delivered in the presence of

    JNO. TAYLOR,

    JAS. TAYLOR,

    NATHANIEL T. HOLTON, J P.

*Held,* That the instrument was a deed, and not a will.

(2.) The sayings of a person, that are against his interest, are good as evidence against him, and those claiming under him by a title created subsequently to the sayings.

Trover, in Ware Superior Court.    Tried before Judge Coch-RAN, at December, Term, 1856.

This was an action of Trover by Hemrick Meek, (as the next friend of his wife, Sythia Meek and her children) against Francis T. Holton, for the recovery of a negro woman named Piety, and her two children.

The defendant pleaded:

1st. The general issue.

2d. The statute of limitations.    And

3d. That he he held said negroes as the executor of the last will and testament of John Taylor, deceased, to whom they belonged at the time of his death.

Upon the trial, on the appeal, plaintiff proved that the woman Piety, formerly belonged to John Taylor, now deceased. That in the Spring of 1850, John Taylor made a division of his property amongst his children, and executed to them respectively conveyances of the property thus given—and that amongst the property given to his daughter Sythia Meek, was the negro Piety.    That he told his daughter to take the negroes home, pay their taxes and take care of them.    That he reserved to himself the right to call on Mrs. Meek for the use of Piety whenever he wanted her to work for him, or to hire her out to raise a little money.    That said negro was on the same day carried to plaintiff's and there remained for several months and that John Taylor, who was an old man, about eighty years old, about the same time went to live with his daughter Mrs. Meek, where he resided until the fall, when he returned to his old place, and took Piety back with him. He remained at the old homestead until 1854, in possession of Piety, when he was carried or removed by defendant who was his son-in-law, to his residence in Ware county, and shortly afterwards, the woman Piety and children were removed and remained there until John Taylor's death, which occurred sometime in the year 1854, at the house of defendant in Ware county.

All the testimony of the witnesses, as to sayings and admissions of old John Taylor relating to the gift of the negro to his daughter, made at any other time than while said negro was in her possession, were rejected and excluded by the Court: and to which ruling plaintiff's counsel excepted.

The following instrument of writing was then offered by plaintiff, to the introduction of which, defendant objected, on the ground, that the writing was a will and not a deed. The Court sustained the objection, and ruled out the paper; and plaintiff excepted.

The following is the paper excluded:

STATE OF GEORGIA, ⎱ This Indenture, made this the 10th
Appling County.   ⎰ day of April, in the year of our Lord, eighteen hundred and fifty, between John Taylor, Sr., of said county and State of the one part, and Sythia Meek, daughter of the said John, and wife of Hemrick Meek, of the same place, of the other part: *Witnesseth*, That the said John Taylor, for and in consideration of the natural love and affection which he has and bears to his said daughter Sythia Meek, hath given and granted and conveyed, and does by these presents, give grant and convey unto the said Sythia Meek and all of her children, free from all disposition of her present or future husband, the following property, to-wit: My negro man Toby about twenty-two years of age, and my negro woman Piety about eighteen years of age, and my negro woman Mariah about fourteen years of age, and one-fourth part of my stock of cattle, besides them I have given to my son James, marked with a crop and split in one ear, hole and underbit in the other, branded thus, J. T.; and one sorrel colt one year old, and my sorrel mare Pol about eight years old, and one sucking colt; the last named mare and colt I only give during my life-time, and at my death to be sold and divided between all of my children: And I also give to my daughter Sythia two beds and bed-steads and furniture, during my life-time, and at my death to be divided between

all my children.   The two negro girls Piety and Mariah, which I have given to Sythia Meek, I am to have the use and control of during my life-time, and at my death to belong to said Sythia Meek as aforesaid: To have and to hold said bargained property, and its increase, unto her the said Sythia Meek, and all her children, together with all and singular the right and title thereof, to her and their own proper use, benefit and behoof forever, in fee simple.   In testimony whereof, the said John Taylor, Sr. hath hereunto set his hand and affixed his seal, the day and year first above written.

his<br>JOHN ⋈ TAYLOR, Sen'r.<br>mark.

Signed, sealed and delivered in the presence of

> John Taylor,
> James Taylor,
> Nathaniel J. Holton, *J. P.*

|  |  |
|---|---|
| Geogia, | } *Clerk's Office.* |
| Appling County. | |

Recorded the above and foregoing deed in book C, on pages 206 and 7, this 4th day of May, 1850.

JESSE MOBLEY, *Clerk, S. C.*

In the progress of the trial, defendant by leave of the Court, withdrew his plea, that he held the negroes as executor of John Taylor, deceased.

Defendant offered no evidence.

The Court charged the jury.   And to many of the charges given, and the refusals to charge as requested, plaintiff's counsel excepted; but as the decision of this Court is confined to the exceptions taken to the rulings and decisions of the Court below upon the testimony, it is deemed unnecessary to set out the charge and exceptions thereto.

The jury found for the defendant.   And plaintiff's counsel excepted.

W. B. GAULDEN, for plaintiff in error.

COLE, HANSELL, LONG, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

Was the instrument offered in evidence as the deed of John Taylor, a deed, or a will? The Court below held, that it was a will, so far as it related to the negroes sued for.

We think that it was not a will, but a deed, even as to those negroes. There were three negroes, Toby, Piety, and Mariah, besides other property mentioned in the instrument. The negroes sued for, are Piety and her children. Now as it concerned all this property, except Piety and Mariah, there is no question but that the instrument was a deed. We think that it was a deed also, as to Piety and Mariah.

Is it possible to suppose, that the author of this instrument intended it to be amphibious; to be both a will and a deed; a will as to Piety, and Mariah; a deed as to Toby and the other property? It may be possible, but, certainly, it is hardly probable.

The instrument is in form, a deed. It is an instrument that can operate as a deed; and can do so, not less as to Piety and Mariah, than, as to Toby and the other property. There is no need, therefore, of holding it to be a will, *ut res magis valeat quam pereat.* Why then, should we by violence done to any thing about it, to even its form, convert it into a will.

The instrument contains these words: " Witnesseth, that the said John Taylor, for and in consideration of the natural love and affection which he has and bears to his said daughter, Sythia Meek, hath given, and granted, and conveyed, and does, by these presents, give, grant, and convey unto the said Sythia Meek, and all of her children," "the following property, to-wit: My negro man, Toby, about twenty-two years of age, and my negro woman Piety, about eighteen years of

Meek vs. Holton.

age, and my negro woman Mariah, about fourteen years of
age, and one-fourth part of my stock of cattle," &c.

Now, the effect of these words taken by themselves, must
have been, to convey the title *immediately* out of John Tay-
lor into Sythia Meek, and her children, so far as "Toby" and
the "stock of cattle" were concerned. But if such was the
effect as to Toby, and the stock of cattle, such must have
been the effect as to "Piety" and "Mariah." The words are
applicable to both of the parcels of property.

These words then, took the title, (that is, the whole inter-
est) out of John Taylor, so far as Piety and Mariah were
concerned, and put that title in Sythia Meek and her chil-
dren.

The instrument also contains these subsequent words:
"The two negro girls, Piety and Mariah, which I have given
to Sythia Meek, I am to have the use and control of during
my life-time, and at my death to belong to said Sythia Meek,
as aforesaid."

Now, by these words, the maker of the instrument takes
back some of the interest of Piety and Mariah, which he had
given by the first words; but does he take it *all* back? Cer-
tainly not. He takes back the use and control of Piety and
Mariah, during *his life;* but the remainder, he leaves where
the first words had carried it, viz: the whole interest, in Sy-
thia Meek and her children.

Considering then the instrument as consisting of these two
sets of words, its *net* effect in its operation upon Piety and
Mariah, was to cause the remainder in the two, to pass out
of Taylor into his daughter and her children; to do so *im-
mediately* on the execution of the instrument, and, in her,
and her children, ever afterwards to abide.

An instrument that can produce such an effect, cannot be
a will, for a will is an instrument that can produce no effect,
until after the death of its author.

[1.] We think that this instrument was not a will:
In this opinion, we are supported by *Robinson vs. Schley*

*&. Cooper* 6. *Ga. Rep.* 516. *Jackson and others vs. Culpepper,* 3. *Ga. R.* 469, and perhaps, opposed by *Symmes vs. Arnold and wife,* 10. *Ga. R.* 506; and *Crary vs. Rawlins,* 8. *Ga. R.* 450. There are, however, some facts in the present case, which make it different from the two last cases. In the present the donor after saying, that he gives the whole of the property, says that he is to have an interest for his life in a *part* of the property. It is *certain,* therefore, that the instrument of conveyance is a deed as to a *part* of the property— that part in which there is no reservation of any interest. And it may be argued with more or less effect, that if words of conveyance, are words of a deed in reference to a part of the property which they convey, they are to be considered as words of a deed, in reference to the other part of the property which they convey.

In those two cases, respectively, the donor after saying that he gives the whole of the property, says that he reserves to himself an interest for his life, in *the whole* of the property. It is no more certain, therefore, that the instrument of conveyance is a deed, as to one part of the property, than that it is as to another.

I must say, however, that I regard these two last mentioned cases, as being in conflict with the two first mentioned; and that I go with the two first mentioned. See *Watson vs. Watson,* and *Bunn vs. Bunn,* decided at this term.

Considered as a deed, this instrument was admissible in evidence for the plaintiff.

Suppose then, the instrument to have been admitted in evidence, as it should have been, the first question will then be, whether the sayings of John Taylor, the author of the instrument were also admissible in evidence.

Some of those sayings were uttered at the time when he made the instrument, and some afterwards: Of the latter, a part were uttered when he was in the possession of the property sued for; a part, when the plaintiffs were in the possession of that property. All of the sayings were to the same

effect, and that was, that he gave or had given, Piety to his daughter Sythia Meek, and her children, but that he reserved the use of Piety to himself for his life-time. That is to say, the sayings were such, that it was against the interest of Taylor to make them, and such, that they ran, not against, but with the written instrument. If then, *Taylor* had been the defendant, the sayings would have been admissible.

Taylor, however, was not the defendant: Holton, his son-in-law was the defendant. But Holton held under Taylor. We are authorized, *prima facie*, to say this. The evidence on the point, was, that John Taylor had the negroes in his possession at his old place; that he went to live with Holton, leaving the negroes behind him; that some weeks afterwards, Holton and another person, came for the negroes, and carried them off; and that Taylor died a month or two afterwards. A presumption arises from all this, that Holton merely assumed Taylor's place as to the negroes, on the death of Taylor, that is, that he had no title to them except one derived from Taylor, as an executor of his own wrong. If so, any sayings of Taylor, that were good against him, were good against Holton, for Holton held under Taylor, and by a title that must have been acquired, (if acquired as supposed, on the death of Taylor,) subsequently to the uttering of any sayings.

[2.] We think, therefore, that the sayings of Taylor were admissible.

Were the sayings of Holton, the defendant, also admissible.

We think so. They were clearly against his interest.

If the instrument had been admitted in evidence, these it is likely are the only questions that would have arisen, if these would. Many of the questions, which did arise, could not have arisen. It is useless, therefore, to take time to dispose of those questions.

There ought to be a new trial.

                                    Judgment reversed.